The next case scheduled for argument this morning is number 20-2803, Canard v. Crew. Mr. Washington. Good morning, Your Honors. Good morning. May I proceed? Please. May it please the Court. My name is Richard Washington, and I represent the appellant, Sylvia Gail Canard, in this matter. By way of background, my client spent nine years at CUNY. Most recently, she served as the chief diversity officer for the Medgar Evers College. The case really centers around a transfer that my client made of two cross complaints alleging discrimination on or about April 9th, 2018, and the fact that she was terminated approximately 17 days later. Had the college made the decision to not renew her contract before April? I would disagree with that. I'm asking.  I do believe that the college discussed the possibility of not renewing her contract in or around February, and I think one of the things that the lower court erred in finding was that the college's discussions around non-reappointment were dispositive. I think if the court looks at the actual language of the email exchange that the lower court relied upon, you will see that it is riddled with not necessarily inconsistencies, but what you see is there are ambiguities. For example, right before the email chain ends, the question becomes, is this really maybe going to happen? And the response to that is, yes, we will probably move her sooner than later, if so. So I think those are salient points that are left out of. Wait a second. Excuse me. The response there was more complete than that. We will probably move her sooner than later. That means transfer her someplace else and assign her somewhere else until her appointment runs out, if so. They were saying her appointment's going to run out. They might transfer her in between, but it seemed to me that this was a reasonable basis to understand that they are checking with a lawyer to see if there's anything precludes her removal or non-renewal and concluding that there is nothing. They talk about an interim transfer in the meantime, and I come away from reading that conversation understanding that they have decided, that Dr. Crew has decided, and that it's a done deal and that consistent with their practices, they allow the appointment to expire rather than terminate prematurely just to avoid some of the problems that can come up on an early termination. Non-renewal, she doesn't have a right to renewal, and therefore that is the prudent way to go. So what am I missing in that narrative? What's incorrect there? Well, I think what's incorrect there is that they set forth a potential course of action that they intended to follow if they were going to terminate her, specifically transferring her, moving her somewhere else until her appointment runs out. But they never followed that course of action. She continued to perform her duties and responsibilities. Excuse me, but the transfer is kind of irrelevant to the reason whether they transferred her on an interim basis or not is irrelevant to the reason for which they ultimately decided not to renew her. Well, right, and I think that's just that's something that we have to consider is what was the ultimate reason they decided not to renew her. I believe that the college stated in situations such as this, even though they have until May 1st, as soon as they understand that there's no obstacle, they populate the letter and the letter goes out. The thing I think that the court should have considered below is what happened in those two months that my client was never informed. As the court noted, she has no right to reappointment. There would have been no problem with them letting her know once they had clearance from the legal department that she was not going to be renewed. However, that's not what happened. That's what I was just saying, though, is it's a matter of employment practice to allow an appointment that's term limited to expire rather than to take an action when even if there's been a decision made ultimately not to pursue continued employment. It wasn't as if she had committed some firing offense that made it intolerable for her to be there. But there was a long course over years of complaints about her performance. And it seemed to me that that record is so complete that it's difficult to rely on an ambiguity in this that you find in this conversation, this email conversation where they're looking to make sure there's no legal barrier to her termination. As a way of concluding that a jury could find that it was her later action right before the end of her term to refer the complaint to CUNY Central that was, in fact, the but for factor for her termination. So once again, what is incorrect in that in that narrative? Well, I think I think what's incorrect in that particular narrative is there's there's evidence from Tanya Isaacs that the practice would be to inform her as soon as the decision is made. The affidavit that she submitted in support of the the appellants a police motion for summary judgment stated that in situations such as this, the letter would go out as soon as the decision had been made. Well, we know that there was no legal obstacle to non reappointment in February, but no letter went out. In fact, no letter went out until after my client referred the the argument. I mean, the complaint to CUNY and even then it didn't go out until after there were other disciplinary or counseling memos that were placed into my client's file preceding the actual termination. So I think when you Mr. Washington. Yes, sir. The Isaacs affidavit paragraph seven. Isaac says employees like plaintiff hired on a renewable when your contractor entitled to notice that they're not going to be renewed. No later than May one of the contract year which there will be a point reappointed or not. As a matter of practice the non reappointment letter is sent out close to the deadline to avoid having an unmotivated and possibly angry employee on staff for a long period of time. After the non reappointment decisions made a boilerplate letters, etc with the non reappointed employees information sent on. So, it was normal practice, they were just following normal practice in waiting till just before May one to to to tell her. Well, then I would ask the, I think the question then becomes, why was it necessary to continue in placing items and documents etc into my clients file in the days and and really three weeks that preceded her receiving the letter, but also fell within the timeframe after she had transferred that complaint to CUNY. I would also ask the court and I know that I'm out of time right now so I would please please take, take a moment to conclude your argument, I would also just ask the court to take a look at the actions that immediately followed the transfer to CUNY, on behalf of defendant crew the manner that he singled out both my client, and the complaining witness in the, in the, in the case that was transferred to CUNY. And lastly, I would just ask the court to take a very close look at the fact that defendant crew gave gave contradictory testimony or statements as to the circumstances surrounding the transfer, whether he knew had no knowledge or actually directed it himself. But with that, I will, I'll save the rest of my time for rebuttal. Thank you all. Very good. Thank you very much. Mr Levitt. Thank you, Your Honors. Can you hear me. Yes. Excellent. Philip Levitt for the appellees. The district court here correctly concluded that defendants decision not to reappoint plaintiff was not unlawful retaliation for at least two independent reasons. Let me focus on the first one that the court focused on with Mr Washington. There is simply no genuine dispute in this case that defendants decided not to reappoint plaintiff before she engaged in the allegedly protected activity of referring greens and complaints to CUNY central office as part of her ordinary job responsibility. So let me start with the first point. Plaintiffs allegedly protected activity preferring those complaints could not have been the but for cause of her non reappointment because defendants decided not to reappoint her well before the referral as ample unrebutted evidence makes clear. Most notably as Judge Carney noted in early February 2018 email exchange. Again, well before the allegedly protected activity Medgar versus colleges human resources director that's Tanya Isaacs stated that the college will be moving forward in non reappointing plaintiff if the HR director stated definitively that they would not reappoint her to interject for just a minute. I mean, your adversary points out that while it certainly seems in that email exchange that they are seriously considering non reappointment but the back and forth is is this really maybe going to happen. Yes, we will probably move her sooner and assign her someone else. If so, that's a little less than definitive isn't it. I don't think it's less than definitive on the relevant question which is whether she would be reappointed. There is some ambiguity there there maybe it's not definitive whether she would be reassigned to a different position until the term ended. You know, a couple months later and as it turned out they actually decided, apparently not to point her to a different position in the meantime they kept her in her original position till the end of her term but as as your honor was suggesting with Mr. Washington. That's exactly what should have been that timeline is exactly what should have been expected here because it's very clear under CUNY policy that the, the person who's contract will not be renewed is not going to be notified. Will be notified by May 1 but will not be notified until shortly before that time in regular practice because they don't want these disgruntled employees to know for a long time that they're not going to be reappointed and then not do their job effectively in the meantime. And I think your honors pointed to exactly the relevant language in his Isaacs declaration and in fact there's additional evidence and other declarations. I believe, Cruz as well. I'm saying exactly the same thing. So, so I think actually the email exchanges is perfectly clear as the district court concluded and that's not the only evidence here. In addition, we have multiple witnesses we have crew we have Isaacs we have the college's chief of staff. Laquisha Murray, all attesting in declarations that defendants have decided not to reappoint plaintiff by the time of the February 2018 email exchange well before the allegedly protected activity. I think we would argue that it shows that the decision was not made that the staff on in CUNY started depositing materials about performance complaints in this canards file after February. How do you interpret that observation. All that is is a continuation of the same issues that Miss canard had for years before and that had been well documented. Well, before that, so you know that there's just nothing that was different that was happening afterwards there's no reason that the college would have stopped documenting these issues merely because they had made the decision. Previously they were simply documenting what continued to happen after that decision had been made and confirming the reason for that decision so let me talk about what those issues were, which explains why the college made the decision that it made when it did extensive evidence dating back well before February 2018 shows that plaintiff had long standing performance issues, there are memoranda dating back more than a year and testimony from multiple witnesses on that. First plaintiff lack thoroughness and follow through in the investigations that were central to her job as chief diversity officer. And second, she also had consistent time and attendance problems, including a pattern of missing meetings she was expected to attend being unreachable during work hours and submitting timesheets late and to go back to your question judge Carney. One of the issues that the appellant points to here that happened after February, is a memo that was added to, or an email that was added to Miss canards file after the fact, you know after February, saying she wasn't responsive about an issue that had come up related to a do we investigation that she had been involved in before and what that email if you if you look at it says is, you know, the same issues that are happening had been happening all along are still happening she wasn't responding when they reached out to her about this on a Friday they didn't hear back to her until the Monday, even though she was called she was emailed she wasn't in her office, it was exactly the same thing that had been happening all along. So let's talk a little bit about the relevant case law which is just crystal clear. You know, in a situation where there's ample evidence that a decision had been made not to reappoint somebody to take an adverse employment action against somebody before protected activity or even that that decision was set in motion before the protected activity. There's simply no basis to find the causation element that's required for a title seven claim so there's the slattery case, and the Thomas you know case from this court which are right on point on that and simply confirm, you know what logic dictates here. So, maybe I'll go just to the second point which is an independent basis to affirm here, and that is that defendants did not understand point of to be engaging in protected activity when she referred greens and correct his complaints to CUNY central office at all. There's no dispute that handling such complaints and referring them to CUNY central office input is in plaintiff's discretion, and it's, and it's part of the plaintiff's ordinary job responsibilities. There is no evidence that defendants understood plaintiff's referral. In this instance to be anything else that would be protected under title seven. In fact, contemporaryaneous email evidence shows that when plaintiff referred the complaints to CUNY central office she merely stated that she was requesting your guidance on the below request to transfer an investigation regarding an allegation of hostile There was no indication that she was expressing a personal view that could make this into protected activity that defendants would understand. And the CUNY official who received the complaint specifically attested that plaintiff did not express support for green or otherwise expressive view on the merits of the complaint. So plaintiff cannot show that she engaged in protected activity of which defendants were aware, as she must in order to prove unlawful retaliation that's an independent second requirement to prove a retaliation complaint. So, so what we pointed to are two independent reasons that require that plaintiff's claim cannot proceed here and the district court correctly. So concluded. So we'd ask the court to affirm that correct determination. Thank you very much. We have your argument. Thank you, Mr Washington, you have reserved three minutes for rebuttal. I really don't think I'll use that much time I just did want to say that I think there is a difference between in the slattery case. I think if you see in the slattery case, the appellants responsibilities were diminished, leading up to the termination. I think in the Tomasino case you had a series of progressive discipline that preceded the termination. I think if you look at the Supreme Court case, Clark County versus Breeden, that the school district followed the actual contemplated course of action that it set forth in the language that discussed terminating the employee in those cases. And I think that the, the, the evidence that counsel alludes to or the corroborating evidence is less than satisfactory. The only person who has any direct evidence of that would be President Cruz. The remaining affidavits are merely hearsay based upon conversations that allegedly took place in January, that are not documented. Likewise, even in the days leading up to my clients termination. The one thing that is documented are emails between General Counsel, making sure that documents are placed into her file, but there's nothing that says exactly when her termination was scheduled to take place. With regard to counsel's arguments about going back to February I think it is important to note that in February, the emails that even initially discussed terminating my client came on the eve of my clients refusal to substantiate a sexual abuse allegation, contrary to what President That was when he first saw it, or even explored the possibility of terminating her based upon that refusal. That's also the first time, or that's also when he first mentioned that she had issues with her time and attendance. As for this conduct being protected under Title VII, I think that the evidence and I think that the lower court set forth a series of evidentiary basis for that determination. One is the fact that my client actually met with the complainant and explained to her why she would be moving the case or referring the case to central office in light of the prior incident with the coach where President Crew took his own, you know, took his own course of action, despite her recommendation. The second thing is that she says she spoke with CUNY central office offline and expressed her belief in the underlying complaint that Dr. Green had against Dr. Okereke. I know that those two affidavits are not consistent, my client versus CUNY central office, but I believe that in the summary judgment context, the lower court has a duty to resolve all ambiguities in favor of my client and to send them to a jury. I think those ambiguities should extend to any ambiguities that exist within that email chain and the timeframe that elapsed between those emails and my client's ultimate termination. Thank you so much for your time, Your Honors. Thank you very much. Thank you both for your arguments. We will reserve decision.